UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Albert R. Steward, III,  Civil No. 10-469 (MJD/FLN)

        Plaintiff,

    v.  **ORDER & REPORT AND RECOMMENDATION**

Wells Fargo Bank, N.A. et al.,

        Defendant.

___

Albert R. Steward, III, *pro se* Plaintiff.
Amy L. Schwartz for Defendant.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 25, 2011 on Plaintiff's Motion for Summary Judgment (ECF No. 20) and Plaintiff's Motion to Strike Defendant's Untimely Response (ECF No. 61), and on April 1, 2011 on Defendant's Motion for Summary Judgment (ECF No. 77). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's motion for summary judgment be **GRANTED** and orders that Plaintiff's motion to strike be **DENIED**.

### I. BACKGROUND

Plaintiff applied for a checking account with Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on October 5, 2009. (Strawn Aff., Ex. A, ECF No. 79.) The account application expressly states that by signing, Plaintiff acknowledges, "I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them. . . ." (*Id.*) Plaintiff's account

1

application was approved and Plaintiff's account was opened on or about October 5, 2009. (Strawn Aff. ¶ 3.)

On October 19, 2009, Plaintiff deposited a $9,200 check (the "Check") into his Wells Fargo checking account. The Check was drawn on the U.S. Bank checking account of Samira and Zuhair Garmo. (Strawn Aff., Ex. C.) Between October 19, 2009 and November 16, 2009, Plaintiff spent or transferred all but $160.41 of the $9,200 deposit. (Strawn Aff. ¶ 5, Ex. D.) On or about November 23, 2009, U.S. Bank informed Wells Fargo that the Check was being returned "refer to maker" because the Check was forged. (Rolland Aff. ¶ 2, ECF No. 80.) U.S. Bank also provided a notice of forgery. (Rolland Aff. ¶ 2, Ex. A.)

Wells Fargo sent a letter to Plaintiff dated November 23, 2009, informing him that the Check had been returned and that his account had been charged $9,200. (Rolland Aff. ¶ 3, Ex. B.) Also on November 23, 2009, Wells Fargo reversed the $9,200 credit that had been applied to Plaintiff's account after the Check was deposited, leaving Plaintiff's account with a negative balance of $8,834.09. (Strawn Aff., Ex. E.) Wells Fargo charged Plaintiff's account overdraft fees totaling $287.00, consisting of one fee of $7.00 on November 23, 2009, and eight fees of $35.00 on November 24, 2009. (Strawn Aff., Ex. E.)

On December 4, 2009, Wells Fargo sent Plaintiff a letter stating that he had a $9,134.07 overdraft balance on his account, and that if he did not satisfy the balance within five business days, the matter "may be referred to law enforcement for prosecution." (Yakich Aff. ¶ 2, Ex. A, ECF No. 82.) Plaintiff did not deposit funds to satisfy the overdraft balance. (Yakich Aff., ¶ 2.) On December 8, 2009, Wells Fargo applied all funds from Plaintiff's other Wells Fargo accounts, totalling $279.10, against the overdraft balance. (Strawn Aff. ¶ 6, Ex. E.)

On December 8, 2009, a Wells Fargo banker filed a "Notice of Late Return" with U.S. Bank at Plaintiff's request. (First Am. Compl. ¶ 21; Rolland Aff. ¶ 4, Ex. C.) On December 18, 2009, U.S. Bank extended a provisional credit of $9,200 to Wells Fargo through Viewpointe Clearing, Settlement & Association, LLC ("Viewpointe Clearinghouse"). (First Am. Compl. ¶ 22; Rolland Aff. ¶ 5.) Wells Fargo placed a 45 business-day hold on the credit. (Rolland Aff. ¶ 6.)

On January 7, 2009 a third party reversed a provisional credit and debited $94.60 from Plaintiff's account. (Strawn Aff., Ex. F.) Wells Fargo charged a $35.00 overdraft fee, bringing Plaintiff's outstanding balance to negative $8,984.56. (Strawn Aff., Ex. F.)

On January 14, 2009, Plaintiff was visited by two officers from the Minnesota Financial Crimes Task Force, who informed Plaintiff that Wells Fargo had filed a complaint against him. (First Am. Compl. ¶ 23; ECF No. 20, Ex. S, Steward Aff. ¶ 15.) Plaintiff states that the police informed him "they were given the records of all my accounts and personal information filed with the bank." (Steward Aff. ¶ 15.)

On January 22, 2010, Wells Fargo closed Plaintiff's checking account and charged off the outstanding balance. (Stawn Aff. ¶ 8, Ex. G.) On that same date, Wells Fargo notified ChexSystems, a consumer reporting agency, that Plaintiff's account had been closed for "account abuse," and that $8,984.00 had been charged-off. (Strawn Aff. ¶ 9, Ex. H.)

On February 26, 2010, the 45 business-day hold on the provisional credit from U.S. Bank expired, and Wells Fargo sent the funds to a banker for distribution. (Rolland Aff. ¶ 12.) On March 8, 2010, Wells Fargo applied the $9,200 payment from U.S. Bank to the $8,984.56 charge-off from plaintiff's account. (Strawn Aff. ¶ 11.) Wells Fargo notified ChexSystems that Plaintiff's account was now paid in full. (Strawn Aff. ¶ 11, Ex. I.) Wells Fargo sent Plaintiff a cashier's check for

$227.41, which included the $215.44 remaining after repayment of the charge-back amount and $11.97 in interest for the 45 business days Wells Fargo held the provisional credit.  (Strawn Aff. ¶ 13, Ex. J.)

In his First Amended Complaint, Plaintiff asserts the following claims against Wells Fargo: Count I: Conversion; Count VII: Negligence; Count IX: Defamation; Count XI: Breach of Banker's Duty of Confidentiality; and Count XIII: Libel.[1]  (ECF No. 5, First Am. Compl.)  The parties have brought cross-motions for summary judgment on all claims.  (ECF Nos. 20, 77.)

## II.  LEGAL ANALYSIS

### A. Summary Judgment Standard

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all

---

[1] Plaintiff withdrew Counts III-VI by letter dated February 23, 2011.  (ECF No. 85.)

of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

**B.   Wells Fargo's responses to Plaintiff's requests for admissions do not support Plaintiff's motion for summary judgment.**

Plaintiff argues that because Wells Fargo did not respond to his First Request for Admissions within 30 days, all requests for admissions are deemed admitted. Plaintiff argues that these admissions support his contention that he is entitled to summary judgment. Plaintiff previously moved the Court to deem these admissions admitted. (ECF No. 25.) By Order dated January 25, 2011, this Court denied Plaintiff's motion to deem admissions admitted. (ECF No. 42.) Wells Fargo has not admitted all of Plaintiff's legal conclusions, and Plaintiff cannot rely on such admissions in support of his motion for summary judgment.

**C.   Wells Fargo is entitled to summary judgment on Plaintiff's conversion claim.**

Plaintiff claims that Wells Fargo converted $9,200 from his checking account in two ways:

(1) by charging back $9,200 from his account on November 23, 2009 and (2) by not immediately depositing the $9,200 credit provided by U.S. Bank into Plaintiff's account when it was received by Wells Fargo on December 18, 2009.  (First Am. Compl. ¶¶ 4-8.)  Plaintiff argues that these actions constitute conversion under both the common law and under UCC §3-420.  Wells Fargo argues that it was legally entitled both to charge back the $9,200 from Plaintiff's account and to hold the $9,200 provisional credit from U.S. Bank for 45 business days.

### 1. Common Law Conversion

The Minnesota Supreme Court has defined conversion as "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession."  *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997).  The Court finds that Wells Fargo was legally entitled to charge back the $9,200 credit to Plaintiff's account and to hold the provisional credit from U.S. Bank for 45 business days.

#### a. The $9,200 Charge Back

Wells Fargo maintains that it was entitled to charge back the $9,200 under Plaintiff's Account Agreement, and therefore the funds were charged back with "lawful justification."  The Account Agreement expressly provides Wells Fargo with the right to charge Plaintiff's account for a returned check, stating:

> The Bank has the right to charge back to or otherwise debit any Account(s) you maintain with the Bank for any Deposited Item that is returned (assess any associated fees and to reverse or recover any associated interest that may have accrued), even if you have made withdrawals against it. The right of charge back or debit is not affected by the expiration of any midnight deadline, provided the Bank does not have actual knowledge that any deadline has expired … . If one of your Deposited Items is returned with a claim that there is a breach of warranty (for example, that it bears a forged endorsement or is altered in anyway), the Bank may debit your Account for the Item (plus any associated fees) and pay the amount to the claiming party. The Bank is under no duty to question the truth of the facts that are being asserted, to

>assess the timeliness of the claim, or to assert any defense. The Bank need not give you any prior notification of its actions with respect to the claim. You agree to immediately repay any overdraft caused by the return of a Deposited Item…

(Strawn Aff., Ex. B at 18.)[2]

Because the Account Agreement authorized Wells Fargo to charge back Plaintiff's account after the Check was returned, Plaintiff cannot establish that Wells Fargo interfered with his property without lawful justification. To the extent that Plaintiff argues that Wells Fargo's charging of overdraft fees constitutes conversion, the account agreement also explicitly allows Wells Fargo to "assess any associated fees" on a returned check, and by signing the account agreement, Plaintiff agreed to "immediately repay any overdraft caused by the return of a Deposited Item." (Strawn Aff. Ex. B at 18.) Because Wells Fargo was entitled under the Account Agreement to charge back the $9,200 from Plaintiff's account and to charge overdraft fees, Plaintiff has no claim for conversion regarding these actions.

### b. The 45 Business-Day Hold on the Provisional Credit from U.S. Bank

Plaintiff also claims that Wells Fargo converted funds that were rightfully his when they received a credit for $9,200 from U.S. Bank on December 18, 2009, but did not release the funds to him for 45 business days. (First Am. Compl. ¶ 8.) Plaintiff argues that under 12 CFR §

---

[2]Plaintiff argues that UCC § 4-214, rather than the account agreement, should govern the charge back. However, provisions of Article 4 of the UCC may be modified by agreement. UCC § 4-103; Minn. Stat. § 336.4-103 ("The effect of the provisions of this Article may be varied by agreement , but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure."). Plaintiff argues, based on the language of UCC § 4-103, that the Account Agreement is unenforceable because Wells Fargo has not exercised ordinary care in the handling of Plaintiff's account. However, UCC § 4-103 states simply that parties cannot modify by agreement a bank's liability for failure to exercise ordinary care, not that a bank's failure to exercise ordinary care voids an otherwise enforceable account agreement. Plaintiff's Account Agreement, which modifies UCC § 4-214, governs the charge back from Plaintiff's account.

229.54(d), Wells Fargo was required to refund the credit for next day availability as soon as it was received. (Pl.'s Reply Mem. at 3, ECF No. 74.) However, Section 229.54(d) provides for expedited recredit in cases where consumers claim a loss relating to a substitute check. Because Plaintiffs claims do not involve a substitute check, Section 229.54(d) is inapplicable.

Wells Fargo argues that it was legally entitled to place a 45 business-day hold on the credit before distributing it to Plaintiff. (Wells Fargo's Mem. Supp. Mot. Summ. J., ECF No. 78.) U.S. Bank provided Wells Fargo with the $9,200 provisional credit through the Viewpointe Clearinghouse. The settlement process for the provisional credit was therefore governed by the Viewpointe Clearinghouse Operational Rules, which incorporate the Federal Reserve Rules. *See* Viewpointe Operational Rules, 2.01(A). Under the Federal Reserve Rules, a payor bank, in this case U.S. Bank, has twenty business-days in which to contest a late return and revoke a provisional credit. *See* Federal Reserve Op. Circ. No. 3 at ¶ 20.5; Rolland Aff., Ex. D. The Federal Reserve rules then provide another twenty business-days for the Federal Reserve Bank, or in this case the Viewpointe Clearinghouse, to process the credit. *See* Federal Reserve Check Adjustment Quick Reference Guide; Rolland Aff. Ex. E.

Once the 40 business-day period expires, Wells Fargo's internal regulations allow Wells Fargo 5 business days to accept the credit and send it to the applicable banker in charge of the customer's account. (Rolland Aff. ¶ 11.) Wells Fargo operations manager Molly Rolland states that while no express law, regulation, or rule states how long a bank has to process a credit from the Clearinghouse after the expiration of the 40 business-day period, Well's Fargo's policy is consistent with that of other national banks. (Rolland Aff. ¶¶ 10-11.) The Court finds that Wells Fargo was legally entitled to hold the provisional credit from U.S. Bank for 45 business days. Because Wells

Fargo promptly credited Plaintiff the funds after the close of the 45 business-day hold period, Plaintiff has no claim for conversion regarding the hold on the funds between Decemeber 18, 2009 and February 26, 2010.

### 2. Conversion Under UCC § 3-420

Plaintiff also argues that Wells Fargo converted his funds in violation of UCC § 3-420. UCC § 3-420 states:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Plaintiff does not argue, and the record does not reflect, that Wells Fargo took the Check from a person not entitled to enforce the instrument, or that Wells Fargo made payment on the Check to someone not entitled to enforce it. Rather, Plaintiff, who was entitled to enforce the check, deposited it with Wells Fargo, and Wells Fargo credited Plaintiff's account. Wells Fargo then revoked the credit when it was informed by U.S. Bank that the check was fraudulent. The facts do not support a conversion claim by Plaintiff against Wells Fargo under UCC § 3-420.

Because Wells Fargo was legally entitled to charge back $9,200 from Plaintiff's account and to place a hold on the provisional credit from U.S. Bank, Wells Fargo should be granted summary judgment with respect to Plaintiff's conversion claim.

### D. Wells Fargo is entitled to summary judgment on Plaintiff's negligence claim.

Plaintiff alleges that Wells Fargo breached a duty of care to him by taking funds out of his accounts, closing his account, releasing his personal and account information, filing a false police report, and wrongfully reporting the account closure to ChexSystems. (First Am. Compl. 18.)

Defendant argues that an expert is required to establish the applicable standard of professional care by the bank. (Wells Fargo's Mem. Supp. Mot. Summ. J. at 17-18.) Plaintiff has not identified such an expert, and the deadline for disclosing experts has expired. Defendant asserts that Plaintiff therefore cannot prove an essential element of his negligence claim.

In order to prevail on his negligence claim, Plaintiff must show: (1) the existence of a duty of care; (2) breach of that duty; (3) that an injury was sustained; and (4) that the breach of duty was the proximate cause of the injury. *Cummings v. Paramount Partners, LP*, 715 F.Supp.2d 880, 914-15 (D. Minn. 2010). While a plaintiff need not provide expert testimony to establish a standard of care for acts or omissions within the general knowledge and experience of lay people, expert testimony is required to prove a standard of care that centers around the exercise of professional judgment. *See A.M.J. v. Royalton Pub. Sch.*, 2006 WL 3626979 (D. Minn. 2006); *Atwater Creamery Co. v. W. Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985).

In this case, the Account Agreement Plaintiff signed defines Wells Fargo's duty of care. The Account Agreement states:

> The Bank will meet its standard of care for your Account, provided the Bank exercises ordinary care in the transaction at issue. … '[O]rdinary care' requires only that the Bank follow standards that do not vary unreasonably from the general standards followed by similarly situated banks.

(Strawn Aff. Ex. B. at 12.) Plaintiff has not identified an expert to testify to the general standards followed by similarly situated banks with regard to the conduct Plaintiff claims breaches Wells Fargo's duty of care. (ECF No. 30, Pl.'s Expert Witness List.) The Court finds that an expert is necessary to define the standard of care for Wells Fargo's actions, as these issues fall beyond the scope of a lay person's knowledge. Plaintiff's failure to introduce any evidence regarding Wells

10

Fargo's duty of care is fatal to his negligence claim, and Wells Fargo's motion for summary judgment should be granted as to this claim.

### E. Wells Fargo is entitled to summary judgment on Plaintiff's defamation and libel claims.

Plaintiff alleges that Wells Fargo committed defamation and libel by reporting to ChexSystems that his account was closed for "account abuse" and by making statements regarding his accounts to the Minnesota Financial Crimes Task Force. (First Am. Compl. ¶¶ 76, 77, 118, 119.)

Under Minnesota law, in order to prevail on a claim of defamation or libel, a plaintiff must show: (1) that statements were made, (2) that the statements were communicated to someone other than the plaintiff, (3) that the statements were false, (4) and that the plaintiff's reputation was harmed as a result of the statements. *See e.g. Thompson v. Olsten Kimberly Qualitycare, Inc.*, 33 F.Supp.2d 806, 815 (D.Minn. 1999.)

#### 1. Statements to ChexSystems

On January 22, 2010, Wells Fargo reported to ChexSystems that Plaintiff's account had been closed and that the reason for the closure was "Account Abuse." (Strawn Aff. Ex. H.) Wells Fargo states that it defines "account abuse" as a violation of the terms of the account agreement. (Strawn Aff. ¶ 15.) Wells Fargo argues that its report to ChexSystems was true because plaintiff breached the account agreement by: "(1) depositing a fraudulent check; (2) incurring excessive overdraft fees; and (3) failing to immediately bring his checking account balance to zero, despite request." (Strawn Aff.¶ 16.) Plaintiff alleges Wells Fargo's statement to ChexSystems was false because at the time the statement was made, Wells Fargo had already received a credit from U.S. Bank for the $9,200 check, and therefore Plaintiff's account was not overdrawn. (Pl.'s Reply Mem. at 11-12.)

The Court finds that Plaintiff has failed to show Wells Fargo's statement to ChexSystems

was false. As described above, Wells Fargo was entitled under the terms of the account agreement to charge back the $9,200 from Plaintiff's account. The Account Agreement also requires Plaintiff "to immediately repay any *Overdraft* caused by the return of a *Deposited Item*." (Strawn Aff. Ex. B. at 18.)

Wells Fargo notified Plaintiff that his account had been charged back $9,200 for the returned check on November 23, 2009. (Rolland Aff. Ex. B.) Wells Fargo wrote to Plaintiff and requested that he make a deposit to cover the $9,134.07 overdraft on his account on December 4, 2009. (Yakich Aff. Ex. A.) When Wells Fargo closed Plaintiff's account on January 22, 2010, the account had an overdraft of $8,984.00 that Plaintiff had failed to repay. (Strawn Aff. ¶ 9.) At that time, the provisional credit from U.S. Bank was still within the 45 business-day hold period, therefore it could not be applied toward Plaintiff's overdraft.

Plaintiff's failure to make a deposit to cover the overdraft of roughly $9,000.00 for over a month after he was specifically requested to do so was a violation of Plaintiff's account agreement with Wells Fargo and was the basis for the closure of Plaintiff's account. Therefore, Wells Fargo's statement that Plaintiff's account was closed for "account abuse" was true. Because Plaintiff has failed to show that Wells Fargo made a false statement to ChexSystems, Wells Fargo is entitled to summary judgment on Plaintiff's defamation and libel claims with regard to the report to ChexSystems.

### 2. Statement to the Minnesota Financial Crimes Task Force

Plaintiff further alleges that Wells Fargo committed defamation by "filing a complaint against him" with the Minnesota Financial Crimes Task Force. (First Am. Compl. ¶ 23.) Wells Fargo argues, without confirming that it made any statements to the Minnesota Financial Crimes

Task Force[3], that it is required under federal law to report suspicious transactions, and that federal law immunizes the bank from any liability for such reporting.

> Reporting of suspicious transactions is required by 31 C.F.R. § 103.18(a)(1), which provides:
>
> Every bank shall file with the Treasury Department, to the extent and in the manner required by this section, a report of any suspicious transaction relevant to a possible violation of law or regulation. A bank may also file with the Treasury Department by using the Suspicious Activity Report specified in paragraph (b)(1) of this section or otherwise, a report of any suspicious transaction that it believes is relevant to the possible violation of any law or regulation but whose reporting is not required by this section.

Banks are specifically immunized from liability for any reporting of suspicious transactions by 31 U.S.C. § 5318, which provides:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority . . . shall not be liable to any person under any law or regulation of the United states, any constitution, law, or regulation of any State or political subdivision of any State . . . for such disclosure . . . .

Accordingly, under federal law, Wells Fargo is immune from liability for any reports to a government agency of possible violations of law by Plaintiff.

Because Wells Fargo is immune from liability for any report made to law enforcement regarding a possible violation of law by Plaintiff, Wells Fargo is entitled to summary judgment on Plaintiff's defamation and libel claims with regard to any report to the Minnesota Financial Crimes Task Force.

**F.  Wells Fargo is entitled to summary judgment on Plaintiff's claim for breach of banker's duty of confidentiality.**

---

[3]Wells Fargo is prohibited under federal law from disclosing a suspicious activity report, or any information that would reveal the existence of a suspicious activity report, made in compliance with the Bank Secrecy Act. *See* 31 U.S.C. § 5318; 31 C.F.R. § 103.18(e).

Plaintiff claims that his contract with Wells Fargo contains an implied term that imposes a general duty of confidentiality. (First Am. Compl. ¶ 101.) Plaintiff alleges that Wells Fargo violated this duty of confidentiality by disclosing his personal account information to the Minnesota Financial Crimes Task Force. (First Am. Compl. ¶ 103.) As described above, Wells Fargo is immune from liability for any disclosure to law enforcement of a possible violation of law by Plaintiff in connection with his Wells Fargo Accounts. *See* 31 U.S.C. § 5318. Wells Fargo is therefore entitled to summary judgment on Plaintiffs claim for breach of banker's duty of confidentiality.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Plaintiff's Motion for Summary Judgment (ECF No. 20) be **DENIED;**

2) Defendant's Motion for Summary Judgment (ECF No. 77) be **GRANTED**;

3) This matter be **DISMISSED with prejudice**; and

4) **JUDGMENT BE ENTERED ACCORDINGLY.**

### IV. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Defendant's Untimely Response (ECF No. 61) is **DENIED**.

DATED: June 10, 2011  *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with

the Clerk of Court and serving on all parties, on or before **June 24, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 24, 2011,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.